# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KINSALE INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 25 cv 13289 |
| v. ) | |
| ) | |
| SELECT DISTRIBUTORS, LLC; ) | |
| CRAZYCOOLSTUFF, LLC; GOO ) | |
| SMOKE SHOP, LLC; NOOR KESTOU; ) | |
| FRANCIS KASHAT; and KEITH ) | |
| SALTER, as Personal Representative for ) | |
| the ESTATE OF TURNER SALTER, ) | |
| Deceased, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff KINSALE INSURANCE COMPANY ("Kinsale") by and through its attorneys TRAUB LIEBERMAN STRAUS & SHREWSBERRY, LLP, and for its Complaint for Declaratory Judgment against Defendants, SELECT DISTRIBUTORS, LLC; CRAZYCOOLSTUFF, LLC; GOO SMOKE SHOP, LLC; NOOR KESTOU; FRANCIS KASHAT; and KEITH SALTER, as Personal Representative for the ESTATE OF TURNER SALTER, Deceased, states as follows:

## NATURE OF ACTION

1. Plaintiff, Kinsale, is an insurance company and issued a products/completed operations liability policy of insurance, policy number 0100166620-2, to Select Distributors, LLC ("Select") and CrazyCoolStuff, LLC ("CCS") for the policy period October 15, 2023, to October 15, 2024 (the "Kinsale Policy"). Kinsale brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration with respect to its duty to defend and indemnify Select, CCS, and its/their principals, Noor Kestou ("Kestou") and Francis Kashat ("Kashat"), under the Kinsale Policy in connection

1

with an underlying lawsuit styled *Keith Salter, as Personal Representative of the Estate of Turner Salter, Deceased v. Select Distributors, LLC, et al.*, Case No. 25-002251-NO, filed in the Circuit Court for Macomb County, Michigan (the "*Salter* Lawsuit"). Kinsale seeks a declaration that no coverage is available under the Kinsale Policy and that Kinsale has and had no obligation to defend or indemnify Select, CCS, Kashat, Kestou and/or any other person or entity in connection with the *Salter* Lawsuit.

2. There exists an actual and justiciable controversy among the parties concerning their respective rights, duties, and obligations under and pursuant to the Kinsale Policy. Kinsale contends that there is no obligation to defend or indemnify Select, CCS, Goo Smoke Shop, LLC ("Goo"), Kashat, and/or Kestou in connection with the claims asserted in the underlying *Salter* Lawsuit based on the terms of the Kinsale Policy and applicable law.

3. Kinsale has no adequate remedy at law and, therefore, desires a judicial determination of its rights and duties in accordance with the Kinsale Policy. A judicial declaration is necessary and appropriate at this time so that Kinsale may ascertain its rights and duties with respect to defense and indemnity under the Kinsale Policy for the underlying *Salter* Lawsuit.

## JURISDICTION AND VENUE

4. Jurisdiction over this matter is appropriate pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

5. Venue is appropriate in this district pursuant to 28. U.S.C. § 1391(a), in that the underlying *Salter* Lawsuit is pending in this district and a substantial part of the events giving rise to this claim occurred in this district. Further, the Kinsale Policy was issued and delivered to Defendant Select at its principal place of business in this judicial district.

## THE PARTIES

6. Kinsale Insurance Company ("Kinsale") is, and at all relevant times has been, a corporation organized under the laws of Arkansas with its principal place of business in Richmond, Virginia, and therefore, is a citizen of Arkansas and Virginia. At all relevant times, Kinsale was an insurance company whose policies may be sold throughout the country, including in Michigan.

7. Select Distributors, LLC ("Select"), is a Michigan limited liability company with its principal place of business in Clinton Township, Michigan. The sole member of Select is Noor Kestou, a resident and citizen of Michigan, who is domiciled in Oakland County, Michigan.

8. CrazyCoolStuff, LLC ("CCS"), is a Michigan limited liability company with its principal place of business in Southfield, Michigan. The members of CCS include Noor Kestou and Francis Kashat. Kestou is a resident and citizen of Michigan, domiciled in Oakland County, Michigan. Kashat is a resident and citizen of Michigan, who is domiciled in Oakland, County, Michigan.

9. Goo Smoke Shop, LLC ("Goo"), is a Michigan limited liability company with its principal place of business in Southfield, Michigan. The members of Goo include Noor Kestou and Francis Kashat. Kestou is a resident and citizen of Michigan, domiciled in Oakland County, Michigan. Kashat is a resident and citizen of Michigan, who is domiciled in Oakland, County, Michigan.

10. Noor Kestou ("Kestou") is a resident and citizen of Michigan, domiciled in Oakland County, Michigan.

11. Francis Kashat ("Kashat") is a resident and citizen of Michigan, domiciled in Oakland County, Michigan.

12. Keith Salter, as Personal Representative for the Estate of Turner Salter ("Salter"), is a citizen of Michigan, residing in Macomb County, Michigan. Salter is the plaintiff in the underlying *Salter* Lawsuit and is joined as a defendant herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that he may be bound by the judgment entered in this case. If Defendant Salter executes a stipulation agreeing to be bound by any judgment entered herein, Kinsale will voluntarily dismiss Salter from this action.

## FACTUAL BACKGROUND

13. On May 29, 2025, Keith Salter, as Personal Representative for the Estate of Turner Salter ("Salter"), filed a Complaint styled *Keith Salter, as Personal Representative of the Estate of Turner Salter, Deceased v. Select Distributors, LLC, et al.*, Case No. 25-002251-NO, in the Circuit Court for Macomb County, Michigan. Salter filed a First Amended Complaint and Jury Demand on August 11, 2025. A copy of the First Amended Complaint is attached hereto as **Exhibit A** (hereinafter, the "*Salter* Lawsuit").

14. The *Salter* Lawsuit alleges that on or around March 4, 2024, Kestou owned and/or operated Select, CCS, and Goo, which were located at 19100 15 Mile Road, Clinton Township, Michigan (hereinafter, the "Property"). *See* Ex. A, ¶ 23.

15. At this time, Kashat co-owned and/or co-operated CCS, which was located at the Property. *See* Ex. A, ¶ 24.

16. It is alleged that Select, Goo, and/or CCS were in the business of purchasing bulk goods and novelty items that were sold to gas stations, liquor stores, and smoke shops; but that Select, Goo, and/or CCS were not authorized for bulk storage and/or warehouse operations at the Property. *See* Ex. A, ¶¶ 25-26.

4

17. Despite this, Salter alleges that Select, Goo, and CCS maintained and stored items in bulk including highly flammable gas cannisters at the Property. *See* Ex. A, ¶ 27.

18. The *Salter* Lawsuit alleges that on March 4, 2024, a fire started at the Property. The fire is believed to have originated in the Southwest storage part of the building where highly flammable gas cylinders were stored in bulk. *See* Ex. A, ¶¶ 41-42.

19. It is alleged that the fire resulted in the rupturing and explosion of compressed gas cylinders, including highly flammable cannisters. *See* Ex. A, ¶ 43.

20. Salter alleges that on March 4, 2024, Turner Salter was at a 24-hour car wash located at 19595 15 Mile Road in Clinton Township, Michigan. *See* Ex. A, ¶ 44

21. The *Salter* Lawsuit alleges that a cylinder from the explosion on the Property hit Turner Salter in the back of the head resulting in blunt head trauma. Turner allegedly died of his injuries on March 5, 2025. *See* Ex. A, ¶ 45.

22. According to Salter, post-incident investigations revealed that over 100,000 highly flammable cannisters were improperly stored at the Property. *See* Ex. A, ¶ 46.

23. The cannister that struck and killed Turner Salter was a butane or nitrous cannister that was stored at and originated from Select's and/or CCS's Property.

24. The *Salter* Lawsuit includes causes of action against Kestou and Kashat sounding in negligence (Count I) and gross negligence (Count II); and against Select and CCS sounding in negligence (Count III) and gross negligence (Count IV).

25. It is also alleged that Kestou and/or Kashat also own and operate "Goo Smoke Shop, LLC" out of or from the Property. *See* Ex. A, ¶¶ 23-27. The *Salter* Lawsuit also alleges causes of action against Goo arising out of the fire and injuries to Turner Salter.

## THE KINSALE POLICY

26. Kinsale issued an Electronic Cigarette Products-Completed Operations Liability Policy, policy number 0100166620-2, to Select Distributors, LLC, and CrazyCoolStuff, LLC, with coverage effective from October 15, 2023, to October 15, 2024 (the "Kinsale Policy"). The Policy contains limits of insurance of $1 million per occurrence and $2 million in the products/completed operations aggregate (which erode by the payment of Supplementary Payments). A copy of the Kinsale Policy is attached hereto as **Exhibit B**.

27. Goo Smoke Shop, LLC, is not identified in the Kinsale Policy as a Named Insured, "insured," named "additional insured," or on any other basis, and therefore, does not qualify as an "insured" under the Kinsale Policy. *See e.g.*, Exh. B, p. 1.

28. Subject to the terms, provisions, exclusions, and conditions of the policy, the Insuring Agreement of the Kinsale Policy provides that Kinsale will pay those sums that the "insured" becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" caused by an "occurrence" arising out of the "products-completed operations hazard." *See* Exh. B, p. 5.

29. The Insuring Agreement of the Kinsale Policy, as amended, further provides that the insurance applies to "bodily injury" and "property damage" only if: a "claim" for "damages" because of the "bodily injury" or "property damage" is <u>first made</u> against any "insured" and reported to Kinsale during the "policy period" or any Extended Reporting Period provided under SECTION V – OPTIONAL EXTENDED REPORTING PERIOD. *See* Exh. B, p. 31.

30. The Kinsale Policy provides that Kinsale's payment of Supplementary Payments, including defense costs incurred or paid by Kinsale on behalf of its insureds, reduce the applicable Limits of Insurance. *See* Exh. B, pp. 5, 14, 16.

31. The term "claim" is defined as a written demand for monetary "damages." *See* Exh. B, p. 23.

32. "Damages" are defined as judgments, awards and settlements that the "insured" becomes legally obligated to pay as a result of a covered "claim." "Damages" do not include declarative, injunctive or other non-pecuniary or equitable relief, punitive, or exemplary damages, or the amount of any multiplied damages award that is in excess of the damage award so multiplied. *See* Exh. B, p. 24.

33. An "occurrence" is generally defined as an "accident." *See* Exh. B, p. 25.

34. The term "Products-completed operations hazard" is defined, in relevant part, to include all "bodily injury" and "property damage" (1) occurring away from premises the insured owns or rents, and (2) arising out of the insured's "product" or "work," except for products that are still in the insured's physical possession; or work that has not yet been completed or abandoned. *See* Exh. B, p. 26.

35. The Insuring Agreement of the Kinsale Policy further provides that where there is no coverage under this Policy, there is no duty to defend. *See* Exh. B, p. 6.

36. The first "claim" for damages made by Salter against an "insured" occurred on November 20, 2024, when Salter made a settlement demand to Select, CCS, and others.

37. SECTION IV, PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS, of the Kinsale Policy includes Condition R (Classification Limitation), which provides in relevant part as follows:

> **R. Classification Limitation**
> This insurance applies only to the operations that are described in the DESCRIPTION OF OPERATIONS shown on the Declarations page of this Policy.

*See* Exh. B, p. 22.

38. The DESCRIPTION OF OPERATIONS shown in the Declarations describes Select's and/or CCS' business as "Distributor of Tobacco Products, Electronic Cigarettes and Smoking Paraphernalia." *See* Exh. B, p. 1.

39. The Kinsale Policy only applies to the insureds' operations as a distributor of tobacco products, electronic cigarettes, and smoking paraphernalia described in the Declarations Page of the Policy. Liability for operations outside the scope of this business description is not covered. *See* Exh. B, pp. 1, 22.

40. In addition to the above, the Kinsale Policy includes Form CAN2009-0422, titled "Limitation – Specified Products," which states as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LIMITATION - SPECIFIED PRODUCTS**

**This endorsement modifies insurance provided under the following:**

**CANNABIS AND HEMP GENERAL LIABILITY COVERAGE**
**ELECTRONIC CIGARETTE GENERAL LIABILITY COVERAGE**
**CANNABIS AND HEMP PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**
**ELECTRONIC CIGARETTE PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

**SCHEDULE**

| "Your Products" for which coverage is provided are listed below: | |
|---|---|
| Brand or Trade Name: | Description: |
| Various brands sold by Select Distributors, LLC | Tobacco, Hookahs and Electronic Cigarettes only |

This insurance applies only to "bodily injury", "property damage", and, if provided, "personal and advertising injury", arising out of "your product(s)" described in the Schedule above.

In the event of any change to any of "your products" specified in the above Schedule during the "policy period", you agree to submit a complete description of such change(s). Coverage under this Policy for any new, changed, or reformulated product will only be afforded by an endorsement issued by us and attached to this Policy.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

\* \* \*

(Hereinafter, the "Specified Products Limitation"). *See* Exh. B, p. 33.

41. The "Specified Products Limitation" Endorsement provides that the Kinsale Policy applies only to "bodily injury" arising out of "your product(s)" described in the Schedule above, which products include brands of tobacco, hookahs, and electronic cigarettes only sold by Select Distributors, LLC.

42. Butane, nitrous, or other highly flammable canisters or products do not fall within the description of "specified products," including tobacco, hookahs, and electronic cigarettes only.

43. The Kinsale Policy also includes Form CAN3019-0422, titled "Exclusion – Designated Products," which states as follows:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – DESIGNATED PRODUCTS**

**This endorsement modifies insurance provided under the following:**

**CANNABIS AND HEMP GENERAL LIABILITY COVERAGE**
**ELECTRONIC CIGARETTE GENERAL LIABILITY COVERAGE**
**CANNABIS AND HEMP PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**
**ELECTRONIC CIGARETTE PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE**

**SCHEDULE**

| Description of "Your Product": | |
|---|---|
| | |

9

| Butane, torch lighters, over-the-counter medications, vitamins and supplements, cleaning solutions, Whip its/cream charges, and detox products | |
|---|---|

The following exclusion is added to this Policy:

This insurance does not apply to any claim or "suit" arising directly or indirectly out of, related to, or in any way involving any of "your products" described in the Schedule above.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

\* \* \*

(Hereinafter, the "Designated Products Exclusion"). *See* Exh. B, p. 44.

44. The "Designated Products Exclusion" precludes coverage for any claim or "suit" arising, directly or indirectly, out of, related to, or in any way involving butane, whip its/cream charges (i.e., nitrous), or any other designated products.

45. The *Salter* Lawsuit alleges injuries arising out of, related to, or involving butane and/or whip its/cream charges including nitrous cannisters or cylinders stored at and originating from the Property.

46. In addition to the above, Section I – Coverages of the Kinsale Policy also includes subsection B., Exclusions, which includes the following relevant exclusions providing that this insurance does not apply to:

> **15. Criminal Acts**
> "Bodily injury" or "property damage" arising out of any criminal act, including but not limited to abuse, molestation or fraud, committed by or at the direction of the "insured".
>
> **16. Dishonest, Fraudulent Or Malicious Acts**
> "Bodily injury" or "property damage" arising out of any dishonest, fraudulent or malicious act, including reckless violation of any statute, or any act deemed uninsurable by law, committed by or at the direction

10

of any "insured".

\* \* \*

**18. Business Conduct**

"Bodily injury" or "property damage" arising directly or indirectly out of, related to, or, in any way involving:

\* \* \*

   **d.** Any actual or alleged violation by any "insured", or by anyone with the "insured's" knowledge, of any law or regulation imposing criminal liability; or

   **e.** Any products or goods manufactured, sold, handled or distributed or work completed by the "insured" or others operating under the direction or control of the "insured" in violation of any law, statute or ordinance of any federal, state or municipal government, or any agencies thereof, including violations of the Lanham Act or other unfair competition statutes.

\* \* \*

**28. Batteries**

"Bodily injury" or "property damage" arising out of any battery.

This exclusion applies regardless of whether:

   **a.** Said battery was manufactured, sold, handled, distributed, or disposed of by you or others trading under your name or on your behalf; or

   **b.** "Your work" or "your product" caused, in whole or in part, such "bodily injury" or "property damage"; or

   **c.** Any other cause, event, material or product attributable to you or a third party which might otherwise be covered under this Policy contributed concurrently with or in any sequence to such "bodily injury" or "property damage".

This exclusion does not apply to a battery that is sealed and contained within a vaping device and that cannot be accessed, removed or modified by anyone following manufacture of the vaping device.

*See* Exh. B, pp. 9-12.

## COUNT I – DECLARATORY JUDGMENT

47.   Plaintiff incorporates and re-alleges the preceding paragraphs 1 through 46 of its Complaint for Declaratory Judgment as paragraph 47 as if fully restated and set forth herein.

48.   Kinsale has and had no duty to defend or indemnify Select, CCS, Goo, Kestou, Kashat, or any other "insured," person, or entity for the claims asserted against them in the *Salter* Lawsuit for the following reasons:

  A. Goo Smoke Shop, LLC, is not an "insured" under the Kinsale Policy, and therefore, is not entitled to any coverage under the terms or provisions of the Kinsale Policy;

  B. The *Salter* "claim" for "bodily injury" was first made outside the Kinsale Policy period, and therefore, was not first made during the policy period and fails to satisfy the Insuring Agreement of the Kinsale Policy;

  C. The damages or injuries alleged or sought in the *Salter* Lawsuit do not arise out of the "products-completed operations hazard" as defined by the Kinsale Policy, and therefore, the *Salter* claim or "suit" fails to satisfy the Insuring Agreement of the Kinsale Policy.

  D. Even if the allegations of the *Salter* Lawsuit satisfy the Insuring Agreement of the Kinsale Policy, which they do not, the injuries or damages do not arise out of operations described in the Kinsale Policy, and therefore, Condition R. (Classification Limitation) has been violated;

  E. Even if the allegations of the *Salter* Lawsuit satisfy the Insuring Agreement of the Kinsale Policy, which they do not, the injuries or damages do not fall within the Specified Products Limitation of the Kinsale Policy;

  F. Even if the allegations of the *Salter* Lawsuit satisfy the Insuring Agreement of the Kinsale Policy, which they do not, the Designated Products Exclusion bars coverage;

  G. Even if the allegations of the *Salter* Lawsuit satisfy the Insuring Agreement of the Kinsale Policy, which they do not, the Criminal Acts Exclusion (Exclusion 15.) bars coverage;

  H. Even if the allegations of the *Salter* Lawsuit satisfy the Insuring Agreement of the Kinsale Policy, which they do not, the Malicious Acts Exclusion (Exclusion 16.) bars coverage;

  I. Even if the allegations of the *Salter* Lawsuit satisfy the Insuring Agreement of the Kinsale Policy, which they do not, the Business Conduct Exclusion (Exclusion 18.) bars coverage;

  J. Even if the allegations of the *Salter* Lawsuit satisfy the Insuring Agreement of the Kinsale Policy, which they do not, the Batteries Exclusion (Exclusion 28.) bars coverage.

49. An actual controversy exists between Kinsale and Defendants and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liability of the parties hereto and to grant such further and other relief as may be necessary.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, Kinsale Insurance Company, respectfully prays that this Honorable Court:

  a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Kinsale Policy;

  b. Find and declare that Kinsale has and had no duty under the Kinsale Policy to defend and/or indemnify Select, CCS, Goo, Kestou, Kashat, or any other "insured," person, or entity in connection with the *Salter* Lawsuit;

  c. Find and declare that Kinsale is entitled to reimbursement or recoupment of any and all attorneys' fees and defense costs paid or incurred on behalf of Select, CCS, Kestou, and/or Kashta to defend the *Salter* Lawsuit; and

  d. Grant Kinsale such other and further relief that the Court deems proper under the facts and circumstances.

Dated this 17th day of October, 2025.

                 Respectfully submitted,

                 */s/ Jason M. Taylor*
                 _____
                 One of the Attorneys for KINSALE INSURANCE COMPANY

Jason M. Taylor (P85247)
jtaylor@tlsslaw.com
Dana Rice (*to be admitted pro hac vice*)
drice@tlsslaw.com
TRAUB LIEBERMAN
STRAUS & SHREWSBERRY, LLP
71 S. Wacker Dr., Suite 2110
Chicago, Illinois 60603
312.332.3900
312.332.3908 (f)